In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00085-CV


______________________________





IN THE INTEREST OF


JARED WADE TUCKER,


A MINOR CHILD






 


On Appeal from the 307th Family District Court


Gregg County, Texas


Trial Court No. 97-1249-DR




 




Before Morriss, C.J., Ross and Grant,* JJ.


Opinion by Justice Ross


*Ben Z. Grant, Justice, Retired, Sitting by Assignment



O P I N I O N



 In this appeal, Connie Haynes challenges certain provisions in an order of the trial
court granting her former husband, Freddy Tucker, the right to establish the primary
residence of their child, Jared Wade Tucker, born December 27, 1989.

 Freddy and Connie divorced April 24, 1998, and were appointed joint managing
conservators of their child, with Connie having primary possession. In April 1999, Connie
filed a motion seeking an increase in child support. In May 1999, Freddy filed a general
denial to Connie's motion and filed his own counter-petition, seeking the right to establish
the primary residence of the child and orders for child support. On August 18, 2000, the
parties entered into agreed temporary orders giving Freddy the right to establish the
residence of the child and the right to enroll him in school. Also under the agreed
temporary orders, Freddy was to be responsible for the child's health insurance premiums
and, in lieu of paying monthly child support to Freddy, Connie was to be responsible for all
pickup and delivery of the child for periods of visitation. The trial court entered a final order
March 22, 2002, denying Connie's motion to modify, ordering primary possession given to
Freddy, ordering Connie to pay $500.00 per month in child support, plus $10,000.00 in
retroactive child support, and ordering Connie to pay $157.00 per month for health
insurance premiums and $5,024.00 in retroactive health insurance premiums.

 In this appeal, Connie contends: 1) a trial court cannot order a parent to pay health
insurance premiums for a child when the only mention of those premiums was in an
attorney's opening statement; 2) a parent who has a child half the time should not be
ordered to pay the full guideline amount of child support, absent evidence of the
comparative needs, incomes, and expenses of the two parents; and 3) when litigating
parents enter into agreed temporary orders regarding the support of their child, the trial
court cannot ignore the parties' agreement and order a higher amount of retroactive
support. Connie also raises the following additional issues: 1) if Connie prevails in
reducing all or part of her retroactive child support and/or health insurance premiums, the
award of attorney's fees for trial to Freddy should be reduced accordingly; and 2) in the
event Connie prevails on some or all issues on appeal, the award of attorney's fees for
appeal should be reduced accordingly.

 The parties in this case disagree about the applicable standard of review. Connie
sets out in her brief the standards of review for legal and factual sufficiency challenges. 
Freddy contends the issues raised on appeal attack an award of child support or related
attorney's fees and are reviewed for an abuse of discretion. 

 When we review a trial court's decision regarding child support, we review for an
abuse of discretion. In re Marriage of Hale, 975 S.W.2d 694, 697 (Tex. App.-Texarkana
1998, no pet.). We again look for an abuse of discretion when we determine whether the
trial court erred in ordering retroactive child support. In re J.G.Z., 963 S.W.2d 144, 146
(Tex. App.-Texarkana 1998, no pet.). In conducting an abuse of discretion review in a
child support context, we have held that, while factual and legal insufficiency of the
evidence are a part of the abuse of discretion review, they are not independent grounds
for reversal. Hale, 975 S.W.2d at 697. We will reverse only if the court abused its
discretion by acting without reference to any guiding rules or principles or by acting
arbitrarily or unreasonably. Id. We view the evidence in the light most favorable to the trial
court's actions and indulge every legal presumption in favor of the judgment. Id.

 As her first point of error, Connie contends the trial court erred when it ordered her
to pay health insurance premiums in the amount of $157.00 per month when the only
mention of that amount was in Freddy's attorney's opening statement. Connie is correct
in her assertion that the only mention of a $157.00 per month health insurance expense
was in the following comment during Freddy's attorney's opening statement: 

 Judge, I have outlined the written issues for the Court, the amount of child
support that's payable. We think we're going to show net resources of
Ms. Tucker somewhere in the neighborhood of a $3,000 range. We think her
proper child support should be approximately $600 a month. Health
insurance premiums paid by Mr. Tucker, $157. We'd like for her to pay that
$157 and unreimbursed medical, one-half.

 In a suit affecting the parent-child relationship, a court is required, except for good
cause shown, to enter an order for the medical support of a child. Tex. Fam. Code Ann.
§ 154.181 (Vernon 2002). Under Section 154.181(e), a reasonable cost for health
insurance is the cost of a health insurance premium that does not exceed ten percent of
the responsible parent's net income in a month.

 Connie testified she did not have health insurance "right this moment." She further
testified her insurance was being reinstated, but she did not know at what time that would
happen. The trial court found that Connie's average monthly net resources for the last
three years was $3,050.00. The court stated in its findings that it was unable to reconcile
the income reported by Connie on her tax returns with her actual spending habits and that
she had an undetermined amount of net resources attributable to income from property
settlements, recoveries for personal injuries, undetermined sums of money from the sale
of assets, and undetermined sums of interest income. The court also found Connie had
made significant cash expenditures within two months before trial, including a purchase of
a 2002 Lexus automobile and the payment of $150,000.00 for a $297,000.00 new home
that is being constructed for her. These findings are supported by the record. Connie's
own exhibits showed she was spending $4,000.00 per month, including $300.00 for
medical insurance, and anticipated her expenses to go up to $6,000.00 per month. In its
findings, the trial court made an "equitable determination that these sums are available or
should have been available for payment of child support." 

 Because $157.00 did not exceed ten percent of Connie's net income per month, and
because the trial court was entitled to take into consideration the $300.00 per month
Connie was spending on medical insurance for herself, we find the $157.00 per month for
health insurance for the child was reasonable as defined by Section 154.181(e). See Tex.
Fam. Code Ann. § 154.181(e). Therefore, it was not an abuse of discretion for the trial
court to order Connie to pay $157.00 per month for the health insurance premiums. 

 Connie next contends the trial court erred in ordering retroactive child support for
August 1999 through July 2000, claiming she was in possession of the child for over fifty
percent of that time period. However, the parties disagree about the amount of time the
child spent with each parent from the time Connie filed suit April 20, 1999, until a
temporary order was entered August 18, 2000. Freddy introduced into evidence a
calendar from January 1999 to July 2000. Freddy did not testify, and no evidence was
given to explain the calendar entries. When asked about her possession of the child,
Connie testified that, without a calendar, she did not know the days she had the child. In
the briefs before this Court, each party interprets the meaning of Freddy's calendar entries
differently. Although she did not explain her methodology, Connie contends the calendar
proved she had possession of the child for over fifty percent of the time. Freddy contends
the calendar does not make notations of the time the child was in Connie's possession. 

 For the period 1999 through June 2000, the calendar shows notations of "with
Freddy" on 107 days and notations of "Connie had Jared" on two days. There are also
notations on the calendar showing when Freddy picked up the child from school and when
he took him to school. Although inferences could be drawn about where the child was on
the other days of the calendar, no clear notations are made. The days in June and July
2000 are marked either with the name "Connie" or "Freddy," with "Connie" written on
twenty-three of the marked days and "Freddy" written on fifteen days. Therefore, if we look
at the notations on the calendar and make no presumptions about where the child was
otherwise, the calendar shows Freddy with possession of the child for 122 days and
Connie with possession twenty-five days. Viewing the calendar in the light most favorable
to the trial court's actions, the calendar evidenced Freddy had possession of the child
significantly more than Connie. This supports the trial court's finding that Connie
relinquished actual possession of the child to Freddy in the summer of 1999. 

 As stated earlier, Freddy did not testify or explain the calendar notations. And,
although Connie testified, she said throughout the record she did not know the days she
had possession of the child. The contentions of error in Connie's brief are based on her
having possession of the child for a significant amount of time. However, no evidence in
the record, including the calendar notations introduced by Freddy, supports her claims of
possession for such a length of time. When reviewing for an abuse of discretion, we view
the evidence in a light most favorable to the trial court's decision. Hale, 975 S.W.2d at
697. We cannot say it was an abuse of discretion for the trial court to order retroactive
child support to be paid by Connie.

 As her third point of error, Connie contends retroactive support orders cannot be
ordered by the trial court when such an order goes against the agreed temporary orders
of the parties. Connie filed a motion to modify child support April 20, 1999. On May 19,
1999, Freddy filed a counter-petition to modify, seeking a change in custody and an order
for child support. In his amended counter-petition, filed July 24, 2000, Freddy alleged that
the living environment with Connie may endanger the child's physical health or significantly
impair the child's emotional development and that Connie had essentially voluntarily
relinquished the actual care, control, and possession of the child for not less than six
months. He also alleged the child was ten years of age or older and had filed with the trial
court the name of the person who was the child's choice for managing conservator. On
August 18, 2000, the parties entered into an agreed temporary order, to be in force until
further order of the court. Under that order, Freddy was given possession of the child and
was ordered to continue to pay the health insurance for the child. In lieu of paying monthly
child support to Freddy, Connie agreed to be responsible for all pickup and delivery of the
child for all periods of possession outlined in the order. 

 On March 22, 2002, the trial court entered its final order. As a part of that order,
Connie was ordered to pay health insurance premiums and child support, retroactive to
August 1, 1999. Connie contends it was error for the trial court to enter retroactive
payments of health insurance and child support because such order goes against the
terms set out in the agreed temporary orders. Freddy contends Tex. Fam. Code Ann.
§ 156.401(b) (Vernon 2002) authorizes the retroactive support that was given in this case.

 Texas courts, including this Court, have held retroactive support under Section
156.401(b) may be retroactive to the filing of the motion to modify. J.G.Z., 963 S.W.2d at
146; Holley v. Holley, 864 S.W.2d 703, 707 (Tex. App.-Houston [1st Dist.] 1993, writ
denied); Willis v. Willis, 826 S.W.2d 700, 702 (Tex. App.-Houston [14th Dist.] 1992, no
writ); Rocha v. Villarreal, 766 S.W.2d 895, 898 (Tex. App.-San Antonio 1989, no writ). 
Specific notice is required when retroactive child support is being sought. J.G.Z., 963
S.W.2d at 148. In J.G.Z., we found it was an abuse of discretion to extend retroactive
support beyond the date of the motion to modify. Id. at 150. In this case, Freddy's motion
to modify was filed May 19, 1999. Connie was ordered to pay retroactive child support
back to August 1, 1999. When Freddy filed his motion to modify May 19, 1999, Connie
had notice that child support was at issue. The trial court has the power to order
retroactive support back to the original motion to modify so long as it puts the other party
on notice that child support is at issue. See Holley, 864 S.W.2d at 707. It was not an
abuse of discretion by the trial court to order payments retroactive to August 1, 1999,
because that date was after Freddy's counter-petition to modify had given Connie notice
that child support was at issue. Nonetheless, Connie contends the trial court cannot order
retroactive child support when it goes against the agreed temporary order entered into by
the parties. 

 This appears to be the first time this issue has been addressed by the appellate
courts in Texas. However, the appellate courts have addressed the effect of temporary
orders in other circumstances. In a divorce case, the Dallas Court of Appeals found a
provision in an agreed temporary order that indicated the debts for which a spouse would
be responsible during the pendency of the case did not bind the trial court in its division of
property and debts after a trial on the merits. Marshall v. Marshall, 735 S.W.2d 587, 597
(Tex. App.-Dallas 1987, writ ref'd n.r.e.). In Ex parte Shaver, the Dallas Court of Appeals
held a divorce decree supersedes a temporary order with respect to future support, but the
obligation for past support, as fixed by the temporary order, continues unless modified by
the provisions of the divorce decree. Ex parte Shaver, 597 S.W.2d 498, 500 (Tex. Civ.
App.-Dallas 1980, orig. proceeding). In Morris v. Morris, the Tyler Court of Appeals held
a temporary order became "functus officio" when the divorce decree was signed by the trial
court. Morris v. Morris, 654 S.W.2d 789, 791 (Tex. App.-Tyler 1983, no writ). 

 As stated, we review an award of retroactive child support for an abuse of discretion. 
J.G.Z., 963 S.W.2d at 146. In J.G.Z., we recognized "it is imperative that the trial judge
have broad discretion to decide whether all of the facts and circumstances necessitate and
justify a retroactive award of support." Id. at 146-47 (quoting Rocha, 766 S.W.2d at 899). 
The Houston Court of Appeals has held an agreement incident to divorce does not prohibit
a modification of support payments and a trial court can "modify the court-ordered support
payments, notwithstanding any agreement of the parties, if it was in the child's best
interest." McGuire v. McGuire, 4 S.W.3d 382, 385 (Tex. App.-Houston [1st Dist.] 1999,
no pet.). Considering all of the above, we hold it was not an abuse of discretion for the trial
court to order retroactive child support for the time period in issue, irrespective of the
temporary orders.

 Because we overruled all of Connie's points of error discussed above, it is
unnecessary to address her contentions regarding attorney's fees.

 We affirm the judgment.



 Donald R. Ross

 Justice


Date Submitted: December 12, 2002

Date Decided: January 10, 2003